# EXHIBIT B

IN ARBITRATION PROCEEDINGS PURSUANT TO HE
COLLECTIVE BARGAINING AGREEMENT BETWEEN THE PARTIES

| | | |
|---|---|---|
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, | ] ] ] ] ] | C-08-2009 |
| | ] | **C O R R E C T E D** |
| | ] | DECISION |
| | ] | |
| Union, | ] | of |
| and | ] | |
| | ] | JOHN KAGEL |
| | ] | |
| PACIFIC MARITIME ASSOCIATION, | ] | Coast Arbitrator |
| | ] | |
| Employers. | ] | July 22, 2009 |
| | ] | |
| | ] | Palo Alto, California |
| Re: CLRC Meeting 13-09 TWIC | ] | |

_____

APPEARANCES:

    For the Union: Leal Sundet, ILWU Coast Committee Member

    For the Employer: Rich Marzano, Director Contract Administration and Arbitration, PMA

MOTION 1:

    "The possession of a TWIC is not a condition of employment under the PCL&CA."

DECISION AS TO MOTION 1:

That is agreed to by the Employers; it was never negotiated that a TWIC is so required. The motion is granted.

MOTION 2:

"PMA's refusal to provide 'escort' for Longshore workers and Clerks is a violation of Section 11.1, PCL&CA—no lockout."

DECISION AS TO MOTION 2:

This case involves about 79 workers who are otherwise registered and entitled to work as Longshore Workers or Clerks as listed on Union Exhibit 1, out of 13,000 to 15,000 workers, who have applied for but not yet obtained TWIC cards for various reasons, some at least not due to any fault of the applicant. According to the Employer the TWIC website shows that 11 have obtain their TWIC cards, 49 have open adjudication and two are closed, 17 not being accounted for.

Section 11.1 of the PCL&CA provides:

"There shall be no strike, lockout or work stoppage for the life of this Agreement."

The common definition of a lockout is as summarized in Roberts' *Dictionary of Industrial Relations:*

> "It is the employer side of economic pressure, when parties are unable to resolve their problems in negotiations or agree on terms or conditions of employment, the strike is the

> union's last resort, the lockout is the employer's. The lockout generally implies a temporary withholding of work by means of shutting down the operation or plant from a group of workers in order to being pressure on them to accept the employer's terms. There is a great difficulty in classifying a situation as a strike or a lockout, since it depends upon determination of who, the union or the employer, is the initiator of the work stoppage."

Here there was no concerted effort on the part of the Employers to gain any term or condition against the group of workers who are involved here. No lockout within the meaning of Section 11.1 was established. The motion is denied.

MOTION 3:

"PMA shall 'escort' such workers or pay lost work opportunity claims."

DECISION AS TO MOTION 3:

As to those workers on Union Exhibit 1 who are dispatched to positions through the rules of the joint dispatch system but who are denied escort by an Employer is denied dispatch. Provided that those workers have made a good-faith application to obtain a TWIC (and have not been finally and totally disqualified from obtaining one) the burden is on the Employer as to whether or not it is practicable to provide an escort under all facts then obtaining in each particular case.

If that occurs and the worker is denied work and not paid a lost work opportunity claim, the worker may file a grievance and proceed through the grievance procedure seeking such claim based on the facts of each case. Such grievances shall be

expedited to the Area Arbitrator level if agreement is not otherwise reached. The motion is granted.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE ABOVE DECISIONS ARE HEREBY AFFIRMED.

                                                  \_\_\_\_s/ John Kagel\_\_\_\_

                                                   Coast Arbitrator