1  Heather McMillan (SBN 188939)
   *heather@scmclaw.com*
2  Daniel P. Stevens (SBN 164277)
   *ken@scmclaw.com*
3  STEVENS & McMILLAN
   335 Centennial Way
4  Tustin, CA 92780
   Tel.:   (714) 730-1000
5  Fax:   (714) 730-1067

6  Attorneys for Representative Plaintiffs:
   EVAGELOS ANDRIKOS, BRYANT BURNS,
7  MICHAEL OLVERA, PAUL RUIZ,
   JERRY VRBANOVIC

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11 EVAGELOS ANDRIKOS,          )   Case No.:    2:19-cv-10421 GW(JCx)
   BRYANT BURNS, MICHAEL       )
12 OLVERA, PAUL RUIZ, JERRY    )   Dist. Judge:     *Hon. George H. Wu*
   VRBANOVIC, on behalf of     )   Magistrate Judge: *Hon. Jacqueline*
13 themselves and other similarly )                  *Choolijian*
   situated non-exempt former and )
14 current employees,          )
                               )   **MEMORANDUM OF POINTS AND**
15              Plaintiffs,    )   **AUTHORITIES IN SUPPORT OF**
                               )   **PLAINTIFFS' MOTION FOR FINAL**
16 v.                          )   **APPROVAL OF CLASS ACTION**
                               )   **SETTLEMENT**
17 PACIFIC MARITIME            )
   ASSOCIATION, PACIFIC        )   Hearing Date:    January 25, 2024
18 MARITIME ASSOCIATION, INC., )   Hearing Time:    8:30 AM
   APM TERMINALS PACIFIC LLC,  )   Room:            9D
19 APS STEVEDORING, LLC,       )
   BENICIA PORT TERMINAL       )   [Notice of Motion;
20 COMPANY, CERES TERMINALS    )   Declaration of Daniel P. Stevens;
   INCORPORATED, CRESCENT      )   Declaration of Judge Stephen G. Larson
21 CITY MARINE WAYS &          )   (ret.);
   DRYDOCK COMPANY, INC.,      )   Declaration of Laura Singh of CPT Group,
22 EAGLE MARINE SERVICES,      )   Inc.; and
   LTD., EVERPORT TERMINAL     )   [Proposed] Order filed concurrently
23 SERVICES, INC., HARBOR      )   herewith]
   INDUSTRIAL SERVICES         )
24 CORPORATION, INNOVATIVE     )   Action Filed:    August 22, 2019
   TERMINAL SERVICES INC.,     )   Removed:         December 9, 2019
25 INTERNATIONAL               )
   TRANSPORTATION SERVICE,     )
26 INC., KINDER MORGAN BULK    )
   TERMINALS LLC, LBCT, LLC,   )
27 MARINE TERMINALS            )

28 _____
   MEMORANDUM OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  CORPORATION, MARINE
   TERMINALS CORPORATION OF
2  LOS ANGELES, MATSON
   NAVIGATION COMPANY, INC.,
3  MATSON TERMINALS, INC.,
   METROPOLITAN STEVEDORE
4  COMPANY, OCEAN TERMINAL
   SERVICES, INC., PACIFIC
5  CRANE MAINTENANCE
   COMPANY LP, PACIFIC RO-RO
6  STEVEDORING, LLC,  PASHA
   STEVEDORING & TERMINALS
7  LP, PORT MAINTENANCE
   GROUP, SSA MARINE, INC., SSA
8  TERMINALS, LLC, TERMINAL
   EQUIPMENT SERVICES, INC.,
9  TOTAL TERMINALS
   INTERNATIONAL, LLC,
10 TRANSPAC TERMINAL
   SERVICES, LLC, TRAPAC, LLC,
11 YUSEN TERMINALS, INC. and
   DOES 1 through 100, inclusive,
12
13             Defendants.
14 _____

MEMORANDUM OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  OVERVIEW OF THE LITIGATION AND FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  SUMMARY OF THE PRELIMINARILY APPROVED SETTLEMENT TERMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . 4

V.  THE SETTLEMENT MERITS FINAL APPROVAL . . . . . . . . . . . . . . . . . 5

    A.  The Extent of Discovery Completed and Stage of Proceedings . . . . 7

    B.  The Settlement was Negotiated at Arms' Length . . . . . . . . . . . . . . . 8

    C.  The Settlement is Fair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.  The Settlement Treats Class Members Equitably . . . . . . . . . . . . . 12

    E.  The Attorneys' Fees, Costs, Enhancement Awards and Class Administration Fees are Reasonable . . . . . . . . . . . . . . . . . . . 12

    F.  View of Class Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1.  Dispatch Hall Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.  PAGA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        3.  Labor Code 226 Claims that are Derivative from the Dispatch Hall claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    G.  Class Members' Reaction to Settlement . . . . . . . . . . . . . . . . . . . . . 16

    H.  The Wheeler Objection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        1)  Settlement of Labor Code Section 226(a) Claims that are Derivative from the Dispatch Hall claims . . . . . . . . 17

        2)  Settlement of PAGA claims . . . . . . . . . . . . . . . . . . . . . . . . 19

        3)  The Class Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        4)  The Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        5)  The Administrator Contact Information . . . . . . . . . . . . . . . . 23

    I.  Additional Class Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

iii

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aerojet–General Corp. v. American Excess Ins. Co.*
    97 Cal.App.4th 387 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Chu v. Wells Fargo Invs., LLC,*
    No. C-05- 4526-MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) . . . . . 13

*Churchill Village, L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Citizens for Open Access v. Seadrift Assn.*
    60 Cal.App.4th 1058 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*
    168 Cal.App.4th 675, 688–689 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dawson v. Hitco Carbon Composites*, Inc.
    No. CV167337PSGFFMX, 2019 WL 6138467 (C.D. Cal. July 9, 2019) . 13

*Dunkin v. Boskey*
    82 Cal.App.4th 171, 98 Cal.Rptr.2d 44 (2000) . . . . . . . . . . . . . . . . . . . 16

*Ellena v. State of California*
    69 Cal.App.3d 245 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Ellis v. Naval Air Rework Facility*
    87 F.R.D. 15 (N.D. Cal. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Federation of Hillside & Canyon Assns. v. City of Los Angeles*
    126 Cal.App.4th 1180, 24 Cal.Rptr.3d 543 (2004) . . . . . . . . . . . . . . . . . 16

*Ficalora v. Lockheed Cal. Co.*
    751 F.2d 995 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Garcia v. Gordon Trucking, Inc.*
    No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575
    (E.D. Cal. Oct. 31, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hanlon v. Chrysler*
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Hicks v. Toys 'R' Us–Delaware, Inc.*
    2014 WL 4703915 (C.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Heritage Bond Litig.*
    No. 02-ML-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) . . . . . 7

MEMORANDUM OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*In re Mego Financial Corp., Sec. Litig.*
    123 F.3d 454 (9th Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Portal Software Sec. Litig.*
    No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)  . . . . 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices,*
    *& Prods. Liab. Litig.* 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)  . . . . . . 7

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*
    654 F. 3d 935 (9th Cirt. 2011)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*LaCour v. Marshalls of California, LLC*
    313 Cal.Rptr.3d 77 (2023)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Larsen v. Beekmann*
    276 Cal.App.2d 185 (1969)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Linney v. Cellular Alaska Partnership*
    1997 WL 450064 (N.D. Cal. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miller & Lux, Inc. v. James*
    180 Cal. 38 (1919)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Monolith Portland Cement Co. v. Mojave Public Util. Dist.*
    4 Cal.App.3d 840 (1970)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Nordstrom Comm'n Cases*
    186 Cal. App. 4th 576 (2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Officers for Justice v. Civil Service Commission of City and*
    *County of San Francisco*, 688 F.2d 615 (9th Cir. 1982)  . . . . . . . . . . . . . . 9

*People ex rel. Mosk v. Barenfeld*
    203 Cal. App. 2d 166 (1962)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pilkington v. Cardinal Health, Inc.*
    516 F.3d 1095 (9th Cir. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Staton v. Boeing Co,*
    327 F.3d 938 (9th Cir. 2016)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United Bank & Trust Co. v. Hunt*
    1 Cal.2d 340 (1934)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Villacres v. ABM Industries Inc.*
    189 Cal.App.4th 562 (2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Woods v. Vector Marketing Corporation*
    2015 WL 2453202 (N.D. Cal. May 22, 2015)  . . . . . . . . . . . . . . . . . . . . 14

v

**Statutes**

Cal. Lab. Code § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Lab. Code § 226(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Lab. Code § 226(a)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Lab. Code § 226(a)(8)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Rules**

Fed. R. Civ. P. 23(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9

Fed. R. Civ. P. 23(e)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Regulations**

Cal. Code Regs. Tit. 8, § 13520  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
    § 11:41 (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MEMORANDUM OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Evagelos Andrikos, Bryant Burns, Michael Olvera, Paul Ruiz, and Jerry Vrbanovic ("Plaintiffs" or "Class Representatives") respectfully request the Court's final approval of the proposed Class Action Settlement Agreement ("Settlement") in the above-captioned action, which will resolve some, but not all, of the claims in the present action before the Court.

The preliminarily approved Settlement provides for a Gross Fund of $9,500,000 to compensate the Settlement Class. The Gross Fund includes a Private Attorneys General Act ("PAGA") Penalty Payment of $100,000.

## II.    OVERVIEW OF THE LITIGATION AND FACTUAL BACKGROUND

The Parties attended an initial mediation on June 11, 2020 with Mediator Michael Dickstein but were unsuccessful in settling the case. (Stevens Decl. at ¶ 6.) The parties attended a subsequent mediation with Todd Smith on October 14, 2020, but no resolution was reached. (Stevens Decl. at ¶ 6.)

Following the second mediation, on October 23, 2020, Plaintiffs filed their Motion for Class Certification. (Stevens Decl. at ¶ 7.) The Court certified one general class of dockworkers for the entire state of California and several subclasses (Dkt. 130), (Stevens Decl. at ¶ 7.)

On July 1, 2022, Defendants filed a Motion for Partial Summary Judgment on Plaintiffs' Dispatch Hall Waiting Time and Travel Time Claims. (Stevens Decl. at ¶¶ 8-9.) On September 8, 2022, the Court granted the motion in full, finding that Defendants were entitled to judgment as a matter of law on Plaintiffs' Dispatch Hall Waiting Time and Travel Time subclass claims. (Id. at ¶¶ 8-9.)

The Parties third mediation, with U.S. District Judge Stephen G. Larson (ret.), took place on September 28, 2022 and was limited to the Dispatch Hall claims. (Stevens Decl. at ¶ 10.) At the conclusion of that mediation session, the

parties were not able to reach a settlement.  (Stevens Decl. at ¶ 10.) Following the mediation, Judge Larson issued a mediator's proposal for $11,500,000, which purported to cover the entire class, including prior opt outs. (Id.) The Parties independently accepted the mediators proposal on or around October 7, 2022. (Id.) After this, the parties independently negotiated for a release of the associated PAGA class for an additional $100,000. (Id.)

On February 17, 2023, Plaintiffs filed a Motion for Preliminary Approval of the Settlement. (Stevens Decl. at ¶ 11.) On February 27, 2023, the ILWU filed paperwork to intervene for purpose of objecting to the settlement. (Id. at ¶ 11)

On March 27, 2023, the Court denied the ILWU's motion to intervene, but advised the parties that it would not allow the parties to add back in individuals who had already opted out.(Id. at ¶ 12)

Plaintiffs filed a motion to invalidate the opt outs.  (Stevens Decl. at ¶ 13.) On May 4, 2023, the Court heard the motion and reiterated that it would not set aside the opt outs. (Stevens Decl. at ¶ 13.) The opt outs represented 31% of the class.  (Id. at ¶ 13.) Since they do not affect the PAGA settlement, that number has not been changed.  (Id. at ¶¶ 13-14.) Defendants and Plaintiffs renegotiated the remaining claims.  (Id. at ¶¶ 13-14.) While the pro-rata 69% share of $11,500,000 is $7,935,000, Plaintiffs were able to persuade the Defendants to settle the dispatch hall claims of the remaining class members for $9,400,000 plus $100,000 for the PAGA claims. (Id. at ¶¶ 13-14.)

The plaintiffs filed a revised motion for preliminary approval on May 11, 2023 which was heard on June 8, 2023. (Id. at ¶ 15.) After reviewing legal briefs and oral argument, the court granted the preliminary approval, appointing CPT as the class administrator and approving the proposed notice form and dates. (Dkt. 226.) (Id. at ¶ 15.)

/ / /

/ / /

## III.   SUMMARY OF THE PRELIMINARILY APPROVED SETTLEMENT TERMS

The Court preliminarily approved the Settlement which consisted of a non-reversionary $9,400,000 gross settlement common fund for the Dispatch Hall related claims and an additional $100,000 for the related PAGA claims.  (Stevens Decl. at ¶¶ 14, 37.)

The Settlement distribution will be as follows: 1) Settlement Administration costs of $75,000 to CPT Group; 2) up to 25% of the $9,400,000 gross settlement common fund to Class Counsel for attorney's fees ($2,350,000); 3) up to $102,000 to Class Counsel for costs; 4) up to $25,000 enhancement award for each Class Representative for a total of up to $125,000; 5) $75,000 to the California Labor Workforce Development Agency (75% of the PAGA payment); and 6) Payment of the remaining money, the Net Settlement Fund, to the individual Class Members based on the number of participating Class Members and the number of shifts they worked during the class period. (Stevens Decl. at ¶¶ 14, 37.)

The full terms of the Settlement are set forth in the Settlement Agreement (*see* Dkt. 217-1, Declaration of Daniel P. Stevens ("Stevens Decl."), Ex. 1).

## IV.   THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER PRELIMINARY APPROVAL

The Court appointed CPT Group, Inc. as the Settlement Administrator to provide notice to the Settlement Class according to the procedures set forth in the Court's Preliminary Approval Order. (Dkt. 226.)  CPT has provided notice of class actions and administrated class action settlements for over 30 years.  (Declaration of Laura Singh ("Singh Decl.") at ¶ 2.)

The Notices advised Class Members of their right to request exclusion from the Settlement, object to the Settlement, dispute their work weeks, or do nothing, and the implications of each such action.  (Singh Decl., Ex. A.) The Notice advised of applicable deadlines and other events, and instructions for obtaining

1 information. (Singh Decl., Ex. A at ¶¶ 8, 9, 13 and 15.)  The Notice also disclosed

2 the claims that would be released upon final approval, the individual Member's

3 total shifts, and the estimated amount of money they would receive. (Singh Decl.,

4 Ex. A at ¶¶  6, 11 and 12.)

5 　　　The Class Period for the Dispatch Hall claims was from August 22, 2015

6 through November 2, 2023.  (Singh Decl. at ¶ 19; Singh Decl. Ex. A at Page 1.)

7 The Class Period for the Dispatch Hall related PAGA claims was from August 22,

8 2018 through November 2, 2023. (Singh Decl. at ¶ 19; Id. Ex. A at Page 1.)

9 　　　CPT received the Court approved text for the Notice Packet on July 21,

10 2023. (Singh Decl. at ¶ 4.) Between June 24, 2023, and August 10, 2023, CPT

11 received class data files that included names, last known mailing addresses, social

12 security numbers and shifts for each Class Member to calculate settlement

13 payments. (Singh Decl. at ¶ 5.) On August 10, CPT conducted a National Change

14 of Address Database search for purposes of confirming and obtaining the most

15 updated and accurate addresses. (Singh Decl. at ¶ 6.)  On August 23, 2023, CPT

16 mailed the Notice Packets to 18,782 Class Members. (Singh Decl. at ¶ 8.)

17 　　　A toll free number was included in the Notice Packet for the purpose of

18 allowing the Class Members to call CPT and to make inquiries about the

19 Settlement. The system was accessible 24 hours a day, 7 days a week.  The Toll

20 free number was listed at the bottom of every page in bold "**Questions? Call Toll-**

21 **Free 1 (888) 268-2099.** " (Singh Decl. at ¶ 9; Singh Decl. Ex. A at Pages 1-7.) at )

22 CPT also indicated class members could contact CPT via mail and listed an

23 address. (Singh Decl., Ex. A at ¶¶ 8, 13 and 15.) In addition, CPT indicated that

24 Class Members could contact Class Counsel if they had any questions about the

25 Settlement and included Class Counsel's phone number.  (Singh Decl. Ex. A at ¶¶

26 4 and 18.)

27 　　　The response deadline for the Class Members to submit objections or opt

28 out was October 7, 2023. (Singh at ¶ 8.)  As of December 18, CPT received only

1  30 opt outs, zero shift disputes, 484 phone calls from Class Members with

2  questions, and 1 objection (by class member Wheeler who has a pending class

3  action for wage statement violations against PMA in state court). (Singh Decl. at ¶

4  13 and 14; Wheeler Class Action Complaint, Dkt. 40-2.)

5      CPT successfully reached and delivered Notice to 18,752 Class Members

6  out of 18,782, which represents 99.84% of the Settlement Class.  (Stevens Decl. at

7  ¶ 40.) Moreover, only 30 out of those 18,752 Class Members requested to be

8  excluded from the Settlement, which represents 0.16% of the Class Members.

9  (Stevens Decl. at ¶ 40.)

10 **V.    THE SETTLEMENT MERITS FINAL APPROVAL**

11      Class action Settlements require court approval before a settlement can be

12 consummated.  Fed. R. Civ. P. 23(e).  The court has broad discretion to grant

13 approval and should do so where the proposed settlement is "fair, adequate,

14 reasonable, and not a product of collusion."  *Hanlon v. Chrysler*, 150 F.3d 1011,

15 1026 (9th Cir. 1998).

16      "[T]he decision to approve or reject a settlement is committed to the sound

17 discretion of the trial judge because he is exposed to the litigants and their

18 strategies, positions, and proof."  *Id.* At the same time, public policy "strong[ly]

19 … favors settlements, particularly where complex class action litigation is

20 concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir.

21 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004);

22 *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Therefore,

23 in exercising its discretion, the Court should give "proper deference to the private

24 consensual decision of the parties" because "the court's intrusion...to a lawsuit

25 must be limited to the extent necessary to reach a reasoned judgment that the

26 agreement is not the product of fraud or overreaching by, or collusion between, the

27 negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

28 and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

1   Approval of a class action settlement involves a two-step process: 1) a
2   preliminary review by the court, and 2) a final review after notice has been
3   distributed to the class for their comment or objections.

4   The first stage was completed when the Court granted preliminary approval
5   on June 9, 2023. (Dkt. 226.) Notice has been completed, and class members have
6   had an opportunity to object to opt out of the settlement, thus the court may now
7   make a final determination whether the settlement is "fair, reasonable and
8   adequate" under Rule 23(e).

9   In determining whether to grant final approval of the settlement, a court
10  examines the terms for overall fairness, balancing the following factors: 1) the
11  strength of the plaintiff's case; 2) the risk, expense, complexity, and likely
12  duration of further litigation; 3) the risk of maintaining class action status
13  throughout the trial; 4) the amount offered in settlement; 5) the extent of discovery
14  completed and the stage of the proceedings; 6) the experience and views of
15  counsel; 7) the presence of a governmental participant; and 8) the reaction of the
16  class members of the proposed settlement *Jones v. GN Netcom, Inc. (In re*
17  *Bluetooth Headset Prods. Liab. Litig.),* 654 F. 3d 935, 946 (9th Cirt. 2011).

18  Recent amendments to Rule 23(e)(2) delineate some additional factors this
19  Court should consider when analyzing whether the Settlement is fair, adequate,
20  and reasonable: (1) class representatives and class counsel have adequately
21  represented the class; (2) the proposal was negotiated at arm's length; (3) the relief
22  for the class is adequate; (4) the proposal treats class members equitably relative to
23  each other.

24  ## A.    The Extent of Discovery Completed and Stage of Proceedings

25  Class Counsel has performed extensive investigation, research, and analysis,
26  including review of over twenty thousand documents, 28 depositions, interviewing
27  hundreds of class members, obtaining over 150 declarations, sending 22,3450 post
28  cards with a link to an online survey, analyzing 1,864 responses to the online

survey, experts, and voluminous written discovery. (Stevens Decl. at ¶ 19.) In
sum, this discovery allowed Plaintiff to adequately evaluate the merits and value
of the class claims.

    *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.
Litig.*, 2016 WL 6248426, at \*14 ("[E]xtensive review of discovery materials
indicates [Plaintiffs have] sufficient information to make an informed decision
about the Settlement.  As such, this factor favors approving the Settlement."); *see
also In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at
\*4 (N.D. Cal. Nov. 26, 2007).  The settlement is proposed only after significant
discovery and motion practice. The parties achieved all litigation to the settled
claims short of trying the case.

## B.    <u>The Settlement was Negotiated at Arms' Length</u>

    "Before approving a class action settlement, the district court must reach a
reasoned judgment that the proposed agreement is not the product of fraud or
overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs*, 955
F.2d at 1290  (quoting *Ficalora v. Lockheed Cal. Co.* 751 F.2d 995, 997 (9th Cir.
1985)).  Where a settlement is the product of arm's-length negotiations conducted
by capable and experienced counsel, the court begins its analysis with a
presumption that the settlement is fair and reasonable.  *See* 4 Alba Conte &
Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002); *In re
Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at \*2 (C.D. Cal.
June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.
1980).

    Here, as detailed more extensively in the Declaration of Daniel Stevens
submitted herewith and on preliminary approval (Dkt. 217-1), the parties engaged
in numerous years of litigation and extensive motion practice and discovery before
the Parties engaged in settlement discussions.  After the Court granted
Defendants' motion for partial summary judgement on Plaintiffs' dispatch hall

MEMORANDUM OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

waiting time and travel time claims, the Parties agreed to a third mediation with Judge Larson (ret.) on September 28, 2022.  Because the litigation was contentious, the parties did not reach settlement on these initial claims until after having three separate mediations. The Court's denial of certification of Plaintiffs' reporting time claim, various admissions and concessions made by both Parties during the summary judgment briefing, and the Court's ruling granting summary judgment on Plaintiffs' Waiting Time and Travel Time claims, also undermining Plaintiffs' wholly derivative reporting time and mileage reimbursement claims, all caused the Parties to focus on resolving the dispatch hall and travel time claims through settlement.

At the conclusion of the third mediation session, the Parties were still very far apart.  (Declaration of Judge Stephen G. Larson (ret.) ("Larson Decl.") at ¶ 3.) Therefore, Judge Larson issued a mediator's proposal, which was subsequently accepted by the Partes on or around October 7, 2022.  (Larson Decl. at ¶ 4 and attached Ex. A.) The settlement discussions before, during, and after the mediation were adversarial, non-collusive, and conducted at arms' length.  Counsel for both sides recognized the substantial risk of an adverse result in the Action.  (Stevens Decl. at ¶ 10.)

In summary, the Settlement was reached only after Class counsel conducted an extensive factual investigation and discovery into the Class's dispatch hall-related claims, after substantial litigation including certification of a class and several subclasses, and summary judgement.  As a result, Class counsel had an in-depth understanding of the claims and damages and had the necessary information before entering into the mediated settlement negotiations, which afforded Class counsel the forum to rigorously evaluate the strengths and weaknesses of the case and to balance the benefits of settlement against the risks of further litigation. Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt the Settlement's fairness.

1    **C.    <u>The Settlement is Fair</u>**

2        The fact that a settlement results from arms-length negotiations following

3    "relevant discovery"creates "a presumption that the agreement is fair." *Linney v.*

4    *Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997).

5        No single criterion determines whether a class action settlement meets the

6    requirements of Rule 23(e). The Ninth Circuit has directed district courts to

7    consider a variety of factors without providing an "exhaustive list" or suggesting

8    which factors are most important. See, *Staton v. Boeing Co*, 327 F.3d 938, 959.

9    "The relative degree of importance to be attached to any particular factor will

10    depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of

11    relief sought, and the unique facts and circumstances presented by each individual

12    case." *Officers for Justice v. Civil Service Commission of City and County of San*

13    *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Due to the impossibility of

14    predicting any litigation result with certainty, a district court's evaluation of a

15    settlement essentially amounts to "'an amalgam of delicate balancing, gross

16    approximations and rough justice.'" *Id*. at 625. The ultimate touchstone, however,

17    is whether "class counsel adequately pursued the interests of the class as a whole."

18    *Staton v. Boeing Co.*, 327 F.3d at 961.

19        The district court's role in evaluating a class action settlement is therefore

20    tailored to meet that narrow objective. *Officers for Justice*, 688 F.2d at 625.

21    Review under Rule 23(e) "must be limited to the extent necessary to reach a

22    reasoned judgment that the agreement is not the product of fraud or overreaching

23    by, or collusion between, the negotiating parties." Id. The "fairness hearing is not

24    to be turned into a trial or a rehearsal for trial on the merits." *Id*. Accordingly, the

25    Ninth Circuit will not reverse a district court's approval of a class action

26    settlement "unless the fees and relief provisions clearly suggest the possibility that

27    class interests gave way to self interest." *Staton*, 327 F.3d at 961.

28        A court should weigh the benefits that the settlement will realize for the

MEMORANDUM OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. See *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); see also *Hanlon*, 150 F.3d at 1026 (when considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity, and likely duration of further litigation.).

In light of Defendant's defenses and obstacles in reversing the summary judgment ruling and then establishing liability, the Settlement is fair, reasonable and adequate. The mediator, Judge Larson, states in his declaration that he believed the number he proposed was "a fair settlement for the case based on the value of the released claims and the risks of going forward." (Larson Decl. at ¶ 5.) Judge Larson also states that if the opt outs were not included in the class, then he would "endorse a pro rata reduction in the total settlement amount based on the number of opt outs." (Larson Decl. at ¶ 5.) Though the opt outs represented 31% of the class, plaintiffs were able to negotiate a final settlement that was only 18% less than the number proposed by Judge Larson, which is much more favorable to the Settlement Class than a pro rata reduction. (Stevens Decl. at ¶ 13.)

An appeal and trial pose significant risks for both sides, extensive costs, and potentially several more years of litigation, which must be considered by the Court when evaluating settlement. *Hanlon*, 150 F. 3d at 1023. This Settlement offers class members a tangible and guaranteed monetary benefit now. It also allows class members to avoid the time and uncertainty of an appeal and further litigation.

## D.    The Settlement Treats Class Members Equitably

This Settlement fundamentally treats all Class Members equally. The Net Settlement Fund will be disbursed to the Participating Class Members based on the number of paid shifts worked by each class member during the Class period.

10

The range of possible recoveries will be smaller for certain class members that only worked for Defendant for a small number of shifts during the class period, to significantly larger recoveries for those class members that worked for Defendant for most or all of the class period. All class members who do not opt out will receive a payment from this settlement, regardless if they make a claim. Therefore, this factor supports preliminary approval.

**E.    The Attorneys' Fees, Costs, Enhancement Awards and Class Administration Fees are Reasonable**

The attorneys fees requested by Class Counsel is 25% of the $9.4 million set aside for the non PAGA related portion of the case. The Ninth Circuit considers 25% of a fund to be the "benchmark" award for class actions. *Powers v. Eichen* ,229 F.3d 1249, 1256 (9th Cir. 2000); *Stanger v. China Elec. Motor*, 812 F.3d 734, 738 (9th Cir. 2016).  The costs are $102,000, which at this point do not capture all of the costs of this litigation, and only constitute approximately 1.1% of the total settlement amount. A detailed explanation of the Attorneys's Fees, Costs and Class Representative Enhancement Awards is the subject of a motion filed concurrently with this motion.

In addition, the cost of the administrator is fair and reasonable.  Before hiring CPT, Class Counsel received two other quotes which were substantially higher.  (Stevens Decl. at ¶ 16.)  CPT has signed a declaration outlining all of the services they have provided and still need to provide pursuant to our agreement. (Singh Decl. at ¶¶ 3-10 and 19-20.)  Considering the number of Class Members, and the duties CPT has agreed to perform, $75,000 is a very reasonable price.

**F.    View of Class Counsel**

**1. Dispatch Hall Claims**

Plaintiffs are aware that there is a substantial risk that an appeal of the district court's rulings could be unsuccessful and that the class would then receive nothing. Plaintiff's comprehensive analysis of the claims and risks were set forth

1   in detail in the motion for preliminary approval and in the Declaration of Daniel P.

2   Stevens attached thereto. (Stevens Decl. at ¶ 23.)

3        Plaintiffs are also aware that even if they are successful in overturning the

4   District Court's rulings in this matter, they would still need to prevail at trial in

5   front of a jury and then prevail on any appeals that the defendants brought after the

6   trial. Thus, it would be several more years before the Class could receive any

7   benefits from a successful adjudication on the merits of this action based on the

8   aforementioned time line.

9        In consideration of the above, Class Counsel believes this settlement

10   provides an immediate, tangible and significant benefit to the class. (Stevens Decl.

11   at ¶ 25.) The immediacy and certainty of recovery is a factor for the court to

12   balance in determining whether the proposed settlement is fair, adequate and

13   reasonable. *In re Mego Financial Corp., Sec. Litig*., 123 F.3d 454, 459 (9th Cir.

14   2000). (Stevens Decl. at ¶ 25.) Since the only path forward on the Settled claims is

15   an appeal, which if successful would lead to a trial and more appeals, there is no

16   question that settlement at this time would ensure an immediate and substantial

17   recovery for the participating Settlement Class Members with no further risk

18   whatsoever. (Id. at ¶ 25.)

19        Plaintiffs' counsel believes, based on the discovery and investigation

20   conducted as mentioned supra, as well as an analysis of the defenses and the

21   current status of the case, that the proposed settlement is fair and reasonable and in

22   the best interests of the Class Members. (Id. at ¶ 25, 31.) Plaintiffs' counsel also

23   relies on the analysis of Ret. District Court Judge Stephen G. Larson who

24   proposed the original terms (with the exception of the $100,00 PAGA settlement)

25   after analyzing confidential briefs from Defendants and Plaintiffs and after hearing

26   a full day of arguments from both sides. Judge Larson has provided a declaration

27   attached herein concerning his thoughts on the Settlement. (Id. at ¶ 25, 31.) Given

28   the significant monetary compensation to each class member and the risks of

1  prolonging litigation given the current status of the dispatch hall related claims,

2  Plaintiff's counsel recommends the proposed settlement as fair, adequate, and

3  reasonable to the class members and in their best interests. (See Id. at ¶ 25, 31.)

4              **2.    PAGA Claims**

5         Since the PAGA claims are predicated on the Dispatch Hall claims, their

6  value to some degree is impacted by the value of the Dispatch Hall claims.

7  Moreover, it is helpful to look at the relative values between the civil claims and

8  the PAGA claims in other settlements because of their intrinsic connection.  The

9  payment to the LWDA to compromise the PAGA claims is well within the range

10 awarded by other courts both in terms of a relative amount and absolute amount,

11 which is around 0 to 2%.  (Stevens Decl. at ¶ 32-33) Here are some examples of

12 cases where settlements included a small PAGA allocation:  *Chu v. Wells Fargo*

13 *Invs., LLC*, No. C-05-4526-MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16,

14 2011) (approving a $10,000 PAGA allocation out of a $6,900,000 gross settlement

15 amount which equals .14 percent); *Hicks v. Toys 'R' Us–Delaware, Inc.*, 2014 WL

16 4703915, at *1 (C.D. Cal. 2014) (approving a $5,000 PAGA allocation out of

17 $4,000,000 gross settlement amount which equals 0.12 percent); *Garcia v. Gordon*

18 *Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *3 (E.D. Cal.

19 Oct. 31, 2012) (approving a $10,000 PAGA allocation out of $3,700,000 gross

20 settlement amount which equals 0.27 percent); *Nordstrom Comm'n Cases*, 186

21 Cal. App. 4th 576, 589 (2010) (approving settlement of wage and hour class action

22 claims and PAGA claims under which no money was allocated to the PAGA

23 claims); *Dawson v. Hitco Carbon Composites*, Inc., No. CV167337PSGFFMX,

24 2019 WL 6138467, at *11 (C.D. Cal. July 9, 2019) (approving a $10,000 PAGA

25 allocation out of $1,100,000 gross settlement amount which equals 0.9 percent).

26        Given the state of the law and the range of PAGA penalties requested and

27 actually awarded in California courts, it is difficult to determine a reasonable value

28 and actual exposure for PAGA penalties.  However, as mentioned above, there are

1 many cases supporting an award between 0 and 2%. The amount allocated here is

2 1.05% which falls around the middle of the cases sited above. (Stevens Decl. at ¶

3 32.) In addition, it should be noted that since class members only get 25% of the

4 PAGA penalties, allocating too much to PAGA claims actually results in less

5 benefit to the class. (Stevens Decl. at ¶ 32.)

6      The PAGA Settlement period is between August 22, 2018 and November 2,

7 2023.  If one were to win on every conceivable claim, the total maximum potential

8 value of these claims could exceed $500,000,000.  Unfortunately, it is virtually

9 impossible to win any of the PAGA claims that were released which makes the

10 settlement value at or near zero.

11      As mentioned in the motion for preliminary approval, we estimate there is

12 about a 5% chance of winning on appeal and then successfully winning a trial on

13 the merits of the Dispatch Hall claims. (Stevens Decl. at ¶ 27.) However, that isn't

14 the real problem.  The real problem is that the employers would argue that the

15 PAGA claims are subject to a "good faith dispute" as to whether any wages were

16 due which would prevent the imposition of penalties. (See eg. Cal. Code Regs. Tit.

17 8, § 13520, *Woods v. Vector Marketing Corporation,* 2015 WL 2453202, at 3-4

18 (N.D. Cal. May 22, 2015), See Stevens Decl. at ¶ 33 for full list of cites)

19      Accordingly, if Class Counsel was somehow able to win the appeal and

20 proceed to trial, Exhibit one to the defense's case would be that Judge Wu, an

21 experienced and neutral judicial officer, made a finding, after looking at all of the

22 evidence, that the wages were not due under the law.  So even if Judge Wu's

23 decision is reversed, how does one argue that the Defendants did not have a good

24 faith dispute as to whether the wages were due when a seasoned District Court

25 Judge agrees with them.

26 / / /

27 / / /

28 / / /

14

3.      **Labor Code 226 Claims that are Derivative from the Dispatch Hall claims**

There were approximately 16,202 Class Members in this category. Each one would conceivably have anywhere from 0 to $4,000 in damages to a Labor Code Section 226 claim. (Stevens Decl. at ¶ 34.) Thus, the maximum value of this case is approximately $64,000,000.  (Stevens Decl. at ¶ 34.) However, as stated above in Paragraph E(7), you would not only have to overturn the court's decision concerning the Dispatch Hall claims at the appellate level and then win those claims at trial, you would also have to overcome a good faith defense that would be bolstered by the defendants' reliance on the Court's earlier decision.  (Stevens Decl. at ¶ 34.) Thus, this derivative claim has very little value, if any, so long as the release does not impact other direct violation cases.  (Stevens Decl. at ¶ 34.)

G.      **Class Members' Reaction to Settlement**

CPT successfully reached and delivered Notice to 18,752 Class Members out of 18,782, which represents 99.84% of the Settlement Class.   Moreover, only 30 out of those 18,743 Class Members requested to be excluded from the Settlement, which represents 0.16% of the Class Members.   None of the Class Members disputed the number of shifts that they were allotted for the Settlement. There was one objection, however, it is by a person who has brought his own class action and had earlier tried to get the case stayed or dismissed.

The paucity of Class Members objecting or excluding themselves from the lawsuit is evidence that there is an overwhelming endorsement of the Settlement (over 99.8% of the Class that received Notice).

H.      **The Wheeler Objection**

In May of 2021, Anthony Wheeler moved to intervene in this action in order to stay this action. (Dkt. 86, Page 2.)  The Court granted Wheeler's motion seeking permissive intervention but denied the request for stay.  (Dkt. 86, page 8; Dkt. 94, Page 2.) Thereafter, Wheeler did not file anything in this action until filing this

MEMORANDUM OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  objection.  In fact, Wheeler confirmed he had no interest in adding the individual

2  employers so he could be included in this action, and instead proceeded with the

3  matter filed in State Court. (Dkt. 89, Page 8; Dkt. 91, Page 12)

4      Mr. Wheeler raises five objections: 1) The Settlement of the Labor Code

5  Section 226(a) Claim is Paltry and Confusing; 2) The PAGA release is too low; 3)

6  there is no definite class period; 4) Class Counsel is not entitled to the fee

7  requested; 5) The Administrator Contact Information is Incorrect.

8          **1.    Settlement of Labor Code Section 226(a) Claims that are**

9              **Derivative from the Dispatch Hall claims**

10      As indicated above, the maximum value of the 226(a) Claims, assuming all

11  of the remaining class members had the maximum number of shifts which is

12  highly unlikely, is approximately $64,000,000. However, as explained above at

13  Paragraphs E(2) and E(3), we find that the value of this specific claim to be

14  extremely small due to the small chance of reversing the underlying Dispatch Hall

15  claims and the extremely strong good faith dispute defense, therefore the Wheeler

16  objection that the amount of this multi million dollar settlement is "paltry" is

17  unfounded.

18      The next question becomes whether or not the settlement would impact

19  other cases involving wage statement violations that are not derivative from the

20  Dispatch Hall claims, such as the *Wheeler* case or the fourth claim in this lawsuit.

21      The res judicata doctrine is applicable "if (1) the decision in the prior

22  proceeding is final and on the merits; (2) the present proceeding is on the same

23  cause of action as the prior proceeding; and (3) the parties in the present

24  proceeding or parties in privity with them were parties to the prior proceeding."

25  (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126

26  Cal.App.4th 1180, 1202, 24 Cal.Rptr.3d 543, italics added.) "[R]es judicata will

27  not be applied 'if injustice would result or if the public interest requires that

28  relitigation not be foreclosed.' " (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171,

181; *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 577.)

In applying the doctrine of res judicata, courts may examine the terms of the settlement agreement to determine if the defendant **waived** res judicata as a defense. (See, e.g., *Citizens for Open Access v. Seadrift Assn*. (1998) 60 Cal.App.4th 1058, 1065–1068; *Consumer Advocacy Group, Inc. v. ExxonMobil* Corp. (2008) 168 Cal.App.4th 675, 688–689, see also *United Bank & Trust Co. v. Hunt* (1934) 1 Cal.2d 340, 345–346; *Aerojet–General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 399–400.)

Thus, while a stipulated judgment normally concludes all matters put into issue by the pleadings, the parties can expressly agree to restrict its scope by withdrawing an issue from the consent judgment. (*Miller & Lux, Inc. v. James* (1919) 180 Cal. 38, 44; see *Monolith Portland Cement Co. v. Mojave Public Util. Dist.*, (1970) 4 Cal.App.3d 840, 846; *People ex rel. Mosk v. Barenfeld* (1962) 203 Cal. App. 2d 166, 176.)

"As cogently stated in *Miller & Lux, Inc. v. James*, ... 'The rule of Res adjudicata is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy, but where they expressly agreed to withdraw an issue from the court, the reason for the rule ceases. The issue is not in fact adjudged, and the parties themselves having consented to that method of trial are not entitled to invoke the rule which requires parties to submit their whole case to the court. If they consent to adjudicate their differences piecemeal, there is no reason that the court should extend the rules of law to prevent that which they Had expressly agreed might be done.'" *Ellena v. State of California* (1977) 69 Cal.App.3d 245, 260–261.

Clearly the settlement agreement limits the release of the pay statement violation to violations that are derivative of the Dispatch Hall claims. (Dkt. 217-1, Ex. A, Pages 21-22.)  This type of claim would only occur if a plaintiff showed that pay was owed for time spent at the Dispatch Hall or for travel from the

1   Dispatch Hall to the work site and the employers willfully failed to include that

2   information on the pay statement. However, if the settlement agreement is not

3   clear enough, the declaration of Class Counsel, Daniel Stevens, and the

4   declaration of the mediator who included this partial claim in his mediator's

5   proposal, Judge Larson, both state that the defendants and the plaintiffs agreed at

6   the time of the settlement that the settlement was only intended to release claims

7   based on the Dispatch Hall fact pattern, and that it would not have any impact on

8   other types of pay statement violation claims. (Stevens Decl. at ¶¶ 17-18, 35;

9   Larson Decl. at ¶ 6.)  This type of extrinsic evidence is admissible to resolve

10  ambiguities in a stipulated judgment. *Ellena v. State of California* (1977) 69

11  Cal.App.3d 245, 259; *Larsen v. Beekmann*, (1969) 276 Cal.App.2d 185, 191.

12              **2.    Settlement of PAGA claims**

13          As explained above at Paragraph E(2), plaintiff believes the PAGA claims

14  related to the Dispatch Halls have little, if any, value.  Thus, Wheeler's objection

15  that the amount is too small is without merit.  However, Wheeler also seemed to

16  be arguing that PAGA claims unrelated to the Dispatch Hall claims are being

17  released.  That is not true.  The Settling parties have no intent nor do they have the

18  authority to release claims that were not raised in their PAGA letter to the State

19  Attorney General.

20          In a recent published decision, *LaCour v. Marshalls of California, LLC*, 313

21  Cal.Rptr.3d 77 (2023), the California Court of Appeal held that a judgment in a

22  prior PAGA action did not preclude a nonparty employee from bringing PAGA

23  claims for Labor Code violations based on different factual allegations.

24          In *LaCour*, defendant sought to preclude plaintiff's PAGA claims based on

25  a judgment in a prior PAGA case.  The LWDA notice in the prior case covered

26  only Labor Code violations for off-the-clock work during time employees spent

27  undergoing an anti-theft bag check procedure at the end of their shifts.  In contrast,

28  *LaCour's* LWDA notice was much broader and dealt with other kinds of claimed

1   Labor Code violations not encompassed in the notice in the previously settled

2   PAGA case. *LaCour* 313 Cal.Rptr.3d at 83.

3       The Court of Appeal concluded that LaCour's PAGA claims were not

4   precluded based on the prior judgement. Specifically, the Court found that where a

5   PAGA plaintiff obtains a judgement based on a settlement and release of claims

6   that exceed the factual allegations set forth in her LWDA letter, that judgment

7   does not preclude broader claims brought by a nonparty PAGA plaintiff in another

8   action, because the settling PAGA plaintiff was not authorized to pursue or settle

9   those claims that exceeded the narrow factual allegations in her LWDA letter.

10  *LaCour*, 313 Cal.Rptr.3d at 93, 94.

11      The Court of Appeal reasoned that "[b]ecause [plaintiff] made no factual

12  showing beyond her end-of-shift theory to support any of the various statutes on

13  the menu of Labor Code sections she mentioned in a footnote to her LWDA notice

14  letter, we cannot say that the doctrine of claim preclusion applies." *LeCour*, 313

15  Cal.Rptr.3d at 93. "If [a PAGA plaintiff] purports to settle PAGA claims that are

16  not the subject of an adequate LWDA notice letter, a PAGA plaintiff exceeds her

17  authority to act on behalf of the LWDA and to that extent cannot bind the LWDA

18  to a judgement, at least not one that will have a claim preclusion effect against a

19  PAGA claimant authorized to litigate a broader set of PAGA claims." *Id.*

20      Similarly, in our case, the plaintiffs' LWDA notice is based on very narrow

21  factual allegations, limited expressly to defendants' failure to compensate

22  plaintiffs for time spent at the Dispatch Hall and traveling from the Dispatch Hall

23  to the work site, and only wage statement claims that are derivative of those

24  dispatch hall claims. (Stevens Decl. at ¶ 36; Dkt. 217-1, Declaration of Daniel P.

25  Stevens, Ex. 2.) The Second Amended Complaint and the settlement agreement

26  track these narrowly defined dispatch hall claims. (Stevens Decl. at ¶ 36; Dkt. No.

27  217-1.)  In contrast, Wheeler's LWDA letter notice covers Labor Code 226 (a)(6)

28  and 226(a)(8) violations for failure to include the dates of the pay period and the

company address on the wage statements. (Stevens Decl. at ¶ 42; Exhibit 3, see Exb. A to Wheeler's First Amended Complaint.) These are clearly two different and distinct factual underpinnings.

### 3. The Class Period

The Class Notice defines the Class Period as August 22, 2015 through November 2, 2023 on page one in the Notice Section, paragraph 1 of Page two, and paragraph 6 of page 3. While the initial paperwork may have stated that the Class Period would end on the date of hearing, the Notice has a distinct and clear end date which was agreed upon between Plaintiffs' Counsel and Defendants' Counsel before the Notice went out and it is the one that will be used.  Thus, the Class Members did in fact receive the correct end date.

### 4. The Attorneys' Fees

The Objector calls the **Defendants'** tactics "underhanded" and then argues that because of that, the **Plaintiffs'** Counsel is not entitled to any Attorneys' fees. He supports this request with no analysis, instead he states that the Class Counsel must be a poor lawyer because they lost the claims being settled, settled the claims for too little (again without analysis), and that there were three other cases that brought these claims prior to Plaintiffs.

First, it is a fallacy to say that losing a case is due to poor lawyering. Judges and juries make decisions every day that give one side or another a victory. Does that mean that the losing party is always a poor lawyer?  Does Wheeler suggest that good lawyers always win and that bad lawyers always lose? Wheeler had a chance to be involved in this case, and chose not to.  Class Counsel was able to obtain Class Certification on a number of claims.  Later, Class Counsel argued multiple theories of liability with regard to the Dispatch Hall claims, but the court did not agree with Plaintiffs' legal theories.  Class Counsel did everything in their power to prepare the case and to argue the motions as can be seen in the court file, the accompanying motion for attorneys fees and the Declaration of Daniel

Stevens.

Second, Class Counsel has outlined the reasons why the case was settled for a percentage of what the maximum value may have been, supra.  However, it would be unlikely under even the rosiest of circumstances that this maximum value would have ever been achieved.

Third, Wheeler is incorrect that three other plaintiffs had brought the same claims.  As was argued more completely in the motion for intervention, none of the other lawsuits even mention the Dispatch Halls. (Dkt. 82 at Pages 5 and 6.)   In fact, Wheeler's lawsuit only contains claims for pay statement violations (none of which are based on a fact pattern that includes a failure to pay for time waiting at or traveling from the Dispatch Halls).

Fourth, Wheeler successfully intervened in this action and was put on the court service list.  Thus, they have had the ability to file paperwork in response to any of the motions in this case.  Moreover, even if they had not received permission to intervene, there was nothing that would have prevented Wheeler from filing their own legal briefs with regard to the partial summary judgment motion on the Dispatch Hall claims or on the Class Certification motion. Indeed, the ILWU found a way to file multiple briefs in this case without intervening at all. Given Wheeler's interest in this case, Wheeler's failure to do take some kind of action if they perceived that the case was not being prosecuted diligently or competently at some point in time is an implied admission that Class Counsel was in fact doing everything in their power on behalf of the class.

Finally, in response to a similar "results don't justify fees" argument filed by the ILWU, this court wrote "In the Court's view, [Class Counsel's] ability to secure a fairly-considerable settlement notwithstanding [the loss on partial summary judgment] at the District Court level is relatively remarkable.  The class members would go from receiving *nothing* on these claims (without, at a minimum, a lengthy and expensive appeal process that the Court believes -

21

1   agreeing with Plaintiffs themselves - has little chance of resulting in their success)

2   to receiving, on average, several hundred dollars each." (Dkt. 223 at Page 2.)

3                    **5.  The Administrator Contact Information**

4           Wheeler is correct that there is a misprint of the telephone number in

5   Paragraph 18 on page 7 of the Class Notice.  However, the correct phone number

6   is printed at the bottom of *every* page with the following content in bold

7   "**Questions? Call Toll-Free 1(888) 268-2099.**" (Singh Decl. at ¶ 9; Ex. A, Pages

8   1-7.)  The correct phone number is literally just an inch or two below paragraph

9   18.  (Stevens Decl. at ¶ 39.) Moreover, Paragraph 18 lists Class Counsel as the

10  primary person to contact with questions **before** they list CPT's  number: "You

11  may contact Class Counsel at the contact information listed above in Paragraph 4

12  if you have any questions about the Settlement." (Stevens Decl. at ¶ 39.) The

13  phone number for Class Counsel in Paragraph 4 is correct. (Id.) So if someone got

14  to the sentence where the CPT phone number is wrong, they would have already

15  read the preceding sentence that said to call Class Counsel and would not be at a

16  loss as to what to do if the number they called didn't work.  (Id.) Paragraph 18 also

17  states that a person can write to CPT if they have a question and lists a correct

18  address.  (Id.) So although it is unfortunate that their was a typo in Paragraph 18,

19  anyone who wanted to ask a question would have no problem finding the correct

20  phone number for CPT or calling Class Counsel.  (Id.) In fact, CPT reports that

21  they received 484 calls (and Class Counsel received numerous calls as well - most

22  of the callers asking when they would receive their money). (Id. at ¶ 40.)

23                    **I.   <u>Additional Class Members</u>**

24          Prior to the first scheduled date for Final Approval, Class Counsel noticed

25  that there were 18,782 Class Members identified in the 2023 mailing despite the

26  fact that in 2022 only 16,202 class members remained in the class after opt outs.

27  Class counsel analyzed the data with CPT and it was determined that none of the

28  people who previously opted out were included in the 2023 class notice. (Stevens

22

Decl. at ¶ 41.) After analyzing the data with CPT and PMA, we were able to determine that the additional class members were persons who were hired after the list that was used for the 2022 notice was compiled.  The vast majority of these people would have been hired as casuals. The settlement pay outs are based on number of shifts worked. Since the settlement discussions and pay outs were based on the number of shifts worked, and not on the number of class members, the additional persons do not change the settlement position. (Stevens Declaration)  In addition, because this group of new people were predominantly casuals who were recently hired, they only represent 0.032% of the total shifts worked, which is a deminimus amount of the total settlement. (See Stevens Decl. at ¶ 41 , Singh Decl. at ¶ 16.)

## VI.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of the Dispatch Hall Claims that meet the requirements of final approval pursuant to Rule 23, subdivision (3) of the Federal Rules of Civil Procedure. The Parties thereby request that the Court (1) grant final approval of the Settlement, and (2) grant final class certification and class action designation of the Settlement.

## VII.    PLAINTIFFS COMPLIED WITH LOCAL RULE  7-3

Class counsel has complied with Local Rule 7-3, having conducted a conference with Defendant's counsel on October 16, 2023, regarding this motion. (Declaration of Daniel P. Stevens at ¶ 91.)

Dated: December 18, 2023          By:     /s/ Daniel P. Stevens

DANIEL P. STEVENS
HEATHER K. McMILLAN

MEMORANDUM OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**CERTIFICATE OF SERVICE**

ANDRIKOS, et al. v. PACIFIC MARITIME ASSOCIATION, et al.

2:19-cv-10421 GW(JCx)

I am over the age of 18 and not a party to the within action. I am employed in the County of Orange, State of California; my business address is 335 Centennial Way, Tustin, California 92780.

On the date set forth below, I caused to be electronically filed the following document(s) described as: 24

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

[X]  **BY CM/ECF SYSTEM:** I caused the above-referenced document(s) to be sent by electronic transmittal to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case listed below:

| | |
|---|---|
| Douglas R. Hart | Eric Meckley |
| Samson C. Huang | **Morgan, Lewis & Bockius LLP** |
| Lauren Nikkhah | One Market, Spear Street Tower |
| **Morgan, Lewis & Bockius LLP** | San Francisco, California 94105-1596 |
| 300 South Grand Avenue | Tel: (415) 442-1000 |
| Twenty-Second Floor | Fax: (415) 442-1001 |
| Los Angeles, CA 90071-3132 | *eric.meckley@morganlewis.com* |
| Tel.: (213) 612-2500 | |
| Fax: (213) 612-2501 | |
| *douglas.hart@morganlewis.com* | |
| *samson.huang@morganlewis.com* | |
| *lauren.nikkhah@morganlewis.com* | |

Clifford D. Sethness
**Seyfarth Shaw LLP**
601 Figueroa St., # 3300
Los Angeles, CA 90017
**Direct:** 213-270-9638
*csethness@seyfarth.com*

*Attorneys for Defendants PACIFIC MARITIME ASSOCIATION, et al.*

[X]    [Federal]    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 18, 2023 at Tustin, California.

/s/ Donald E. Corbett
Donald E. Corbett